IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

UNITED STATES OF AMERICA,

          Plaintiff,

    vs.

SOLOMON ALEJANDRO STEWARD,

          Defendant.

No. 3:20-mj-

 Nov 22 2020

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, R. Allen Adair, having been first duly sworn, do hereby depose and state as follows:

## 1. INTRODUCTION AND AGENT BACKGROUND

1.    I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that SOLOMON ALEJANDRO STEWARD has committed the following federal criminal offenses:

> **Count 1**: On or about November 20, 2020, within the District of Alaska, SOLOMON ALEJANDRO STEWARD knowingly possessed cocaine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C).

> **Count 2**: On or about November 20, 2020, within the District of Alaska, SOLOMON ALEJANDRO STEWARD possessed firearms in furtherance of the drug trafficking crime alleged in Count 1, in violation of 18 U.S.C. § 924(c)(1)(A)(i).

2.    The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, my own investigation of this matter, and my training and experience.  Since this affidavit is being submitted for the limited purpose of

establishing probable cause to support a complaint and securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.

3.      I am a Police Detective employed by the Municipality of Anchorage Police Department (APD) and am presently a Commissioned Police Officer in the State of Alaska, assigned as a Task Force Officer to the Bureau of Alcohol, Tobacco, Firearms, and Explosives, Anchorage Field Office.  Between May 2007 and April 2019,I was assigned to APD's Vice Unit.  My responsibilities within the Vice Unit involved investigations related to the trafficking of controlled substances.

4.      I have more than twenty-five years of combined law enforcement experience.  I was an explosive and drug detector dog handler with the United States Air Force from June 1991 to August 1996.  In August 1996, I was credentialed as a Special Agent with the Air Force Office of Special Investigations.  In August 2004, I left active duty with the military and was employed with the Anchorage Police Department as an Officer.  I retired from the Air Force Office of Special Investigations in May 2011.

5.      I have graduated from three basic law enforcement academies. The first was the United States Air Force Police Academy in December 1991. The second was the Air Force Office of Special Investigations Academy in November 1996 and the third was the APD Academy in January of 2005; as a result of my training and experience, I am familiar with the Federal Firearms and Drug laws.

## 2. FACTS ESTABLISHING PROBABLE CAUSE

6.      On November 20, 2020, Agents and Task Force Officers with the Anchorage- ATF

U.S. v. Steward
3:20-mj-

Field Office assisted members of the Anchorage Police Department Community Action Policing Unit with the execution of a state search warrant (3AN-20-4391SW) at 1323 Chirikof Court, Anchorage, Alaska. Investigation had previously determined this location to be the residence of SOLOMON ALEJANDRO STEWARD. At the time of the search warrant, officers also had a state arrest warrant (3AN-20-9006CR) for STEWARD for three counts of Misconduct Involving Weapons in the Second Degree, Assault in the Third Degree, Assault in the Fourth Degree, four counts of Misconduct Involving Weapons in the Fourth Degree, and three counts of Criminal Mischief in the Third Degree which they intended to serve.

7.      STEWARD's state charges stem from multiple incidents in October 2020 in which STEWARD participated in two separate shootings of occupied residential locations associated with his ex-girlfriend. Fired cartridge casings recovered from each of these residential locations were presumptively linked through the National Integrated Ballistic Information Network (NIBIN). In addition to these shootings, STEWARD has been charged with physically assaulting an ex-girlfriend and threatening her with a firearm.

8.      On November 20, 2020, STEWARD was also on state pretrial release in a different felony case (3AN-20-07735CR), supervised by the Alaska Department of Corrections Pretrial Services office in Anchorage.

9.      On November 20, 2020, investigators established surveillance of STEWARD's residence. STEWARD's bedroom is located on the upper southwest corner of the residence. During this surveillance, investigators observed STEWARD frequently peering

U.S. v. Steward
3:20-mj-

Nov 22 2020

through the closed blinds of his bedroom window and looking up and down the street on multiple occasions. During the surveillance, STEWARD's pretrial services officer contacted him by telephone and instructed him to report to the Anchorage pretrial services office. Following this call, STEWARD departed and returned to his room on at least four separate occasions. When STEWARD did not comply with his reporting instructions, he was once again contacted by his pretrial services officer. STEWARD told the officer that he did not have transportation and the supervising officers could meet him at his residence. STEWARD was led to believe there was an issue with his electronic monitoring equipment that needed to be addressed. After the second call from pretrial services, STEWARD departed and returned to his room several more times. STEWARD's demeanor appeared frantic as he was observed looking through the blinds from his bedroom.

10.    At approximately 1700 hours, investigators knocked on the front door of STEWARD's residence. At this time, ATF Special Agent Aaron Ybarra observed STEWARD walking down the stairs inside the residence. It appeared to SA Ybarra that STEWARD was walking down the stairs to answer the door, however, STEWARD quickly walked back up the stairs to his bedroom. SA Ybarra then observed STEWARD spend several minutes moving in and out of his bedroom to various locations throughout the house. STEWARD walked from his bedroom towards the living room/kitchen area. On one occasion after walking out of his bedroom, STEWARD remained out of view on the second floor for a short period of time before walking down the stairs again. Eventually, STEWARD responded to the front door, where he was taken into custody and arrested on

U.S. v. Steward
3:20-mj-

Page 4 of 7

Case 3:20-mj-00565-MMS   Document 1-1   Filed 11/23/20   Page 4 of 7

 Nov 22 2020

through the closed blinds of his bedroom window and looking up and down the street on multiple occasions. During the surveillance, STEWARD's pretrial services officer contacted him by telephone and instructed him to report to the Anchorage pretrial services office. Following this call, STEWARD departed and returned to his room on at least four separate occasions. When STEWARD did not comply with his reporting instructions, he was once again contacted by his pretrial services officer. STEWARD told the officer that he did not have transportation and the supervising officers could meet him at his residence. STEWARD was led to believe there was an issue with his electronic monitoring equipment that needed to be addressed. After the second call from pretrial services, STEWARD departed and returned to his room several more times. STEWARD's demeanor appeared frantic as he was observed looking through the blinds from his bedroom.

10.    At approximately 1700 hours, investigators knocked on the front door of STEWARD's residence. At this time, ATF Special Agent Aaron Ybarra observed STEWARD walking down the stairs inside the residence. It appeared to SA Ybarra that STEWARD was walking down the stairs to answer the door, however, STEWARD quickly walked back up the stairs to his bedroom. SA Ybarra then observed STEWARD spend several minutes moving in and out of his bedroom to various locations throughout the house. STEWARD walked from his bedroom towards the living room/kitchen area. On one occasion after walking out of his bedroom, STEWARD remained out of view on the second floor for a short period of time before walking down the stairs again. Eventually, STEWARD responded to the front door, where he was taken into custody and arrested on

U.S. v. Steward
3:20-mj-

Page 4 of 7

Nov 22 2020

the state charges. An additional 4 adults were located in the residence at the time of STEWARD's arrest.

11.     Following STEWARD's arrest, agents assisted APD officers with the execution of the state search warrant.  As previously mentioned, STEWARD was observed during surveillance walking from his bedroom to the east portion of the residence towards the living room and kitchen.  While searching the living room and kitchen area investigators recovered two firearms hidden behind books on a bookshelf:

- Glock 19 GEN4 9mm pistol, serial number: ADCX347

- Glock 17 GEN4 9mm pistol, serial number: G132243

The Glock 19 GEN4 pistol was reported stolen.  Both firearms were loaded with a round in the chamber. One of the firearms had an extended magazine.

12.     As previously mentioned, STEWARD was also observed walking from his bedroom and remaining out of view on the second floor for a short period of time before reappearing and walking down the stairs.  While searching a room adjacent to STEWARD's bedroom, investigators recovered a blue bag from the attic access in the closet.  A search of this bag resulted in the recovery of the following items:

- Approximately 81.6 grams of a substance that appeared to be cocaine hydrochloride

- Approximately 10.8 grams of unknown blue pills/tablets

- Social security card for SOLOMON ALEJANDRO STEWARD

- Birth certificate for SOLOMON ALEJANDRO STEWARD

U.S. v. Steward
3:20-mj-

This room appeared to be used as a movie or gaming room.

13.    SA Ybarra weighed the substances recovered from STEWARD's residence and determined that the suspected cocaine hydrochloride weighed approximately 81.6 grams. A field-test conducted in the presence of SA Ybarra was presumptive positive for cocaine hydrochloride.

14.    From my training and experience investigating narcotics trafficking, I know that this quantity of cocaine hydrochloride and the manner in which it was packaged is consistent with further distribution and is inconsistent with personal consumption.

15.    Based on my training and experience investigating narcotics trafficking, I know that individuals involved in the sale and distribution of illegal controlled substances often own, possess and/or use firearms as a means of facilitating their illegal drug activities. These firearms are often used to protect and secure a drug trafficker's narcotics supply and/or cash proceeds acquired from the sale and distribution of illegal controlled substances from theft by other criminals. Drug traffickers also possess firearms as a means of enforcing drug transactions, i.e., as a means of ensuring payment for the drugs they are selling. Thus, the possession of the firearms described in paragraph 11 would have furthered the drug trafficking offense alleged in this complaint.

**3. Conclusion**

16.    I have probable cause to believe that STEWARD has committed the offenses described in the complaint. Accordingly, I ask the court to issue a warrant for STEWARD's arrest in accordance with Federal Rule of Criminal Procedure 4(a).

U.S. v. Steward
3:20-mj-


Nov 22 2020

RESPECTFULLY SUBMITTED,

R. Allen Adair
Task Force Office, Bureau of Alcohol,
Tobacco, Firearms, and Explosives

SUBSCRIBED TELEPHONICALLY

AND SWORN DIGITALLYTO before me on  November 22, 2020

UNITED STATES MAGISTRATE JUDGE

U.S. v. Steward
3:20-mj-